S. LANE TUCKER
United States Attorney

RYAN TANSEY
Assistant United States Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: ryan.tansey@usdoj.gov

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) |
| RAIHANA NADEM, | ) No. 4:21-cr-00011-RRB-SAO |
| Defendant. | ) |

# GOVERNMENT SENTENCING MEMORANDUM

## SUMMARY OF SENTENCING RECOMMENDATIONS

**TERM OF IMPRISONMENT** .............................................. 363-days (home detention)

**SUPERVISED RELEASE** ........................................................................ 3 years

**SPECIAL ASSESSMENT** ........................................................................... $100

The United States respectfully recommends that the Court to impose a sentence of 363-days imprisonment to be served on home detention, followed by a three-year term of supervised release. This sentence is consistent with the parties' plea agreement and is sufficient, but not greater than necessary to deter others and punish the defendant for agreeing to structure a financial transaction in support of her husband's bribery scheme with Brian Nash.

I. INTRODUCTION

    a. **Facts and Procedural History**

The facts of this case are set forth in the parties' plea agreement and the PSR. *See* Dkts. 146 (Plea Agreement) and 169 (PSR) ¶ 5-16. The defendant has denied any knowledge of the bribery relationship between her husband, Ryan Dalbec, and Brian Nash. The government remains skeptical of these denials. Among other things, the defendant lied to FBI agents during her voluntary interview prior to execution of the search warrant in this case, including initially denying that she even knew Brian Nash, which is directly belied by text messages and phone calls between Nadem and Nash. Second, the defendant clearly played a role in Dalbec's business Best Choice Construction, evidenced by dozens of text messages between Nadem, Dalbec, and Nash, which are set forth in detail in the Indictment and the PSR. That said, in light of Ms. Nadem's cultural upbringing and the control exercised by defendant Dalbec, it is arguably colorable that she did not initially comprehend the corrupt nature of the relationship between Dalbec and Nash, which may have formed the basis of a colorable defense at trial. In light of this and other factors

described below, on September 2, 2022, the government allowed Nadem to plead guilty to one count of structuring a financial transaction in violation of 31 U.S.C. § 5324(a)(3).

## II. SENTENCING CALCULATION

### a. Statutory Maximum Sentence

The maximum sentence that may be imposed on the defendant for a violation of 31 U.S.C. § 5324(a)(3) is 5 years' imprisonment, a $250,000 fine, three years' supervised release, and a $100 special assessment.

### b. Sentencing Guidelines Calculation

The United States agrees with the Probation Officer's Guidelines calculation of 24 to 30 months, in Criminal History Category I.

### c. The Probation Officer's Recommended Sentence

The Probation Officer recommends a sentence of 5 years' probation and a $25,000 fine.

## III. GOVERNMENT'S RECOMMENDATION

The United States believes that the requested term of home detention with the below conditions is sufficient to deter others and punish the defendant for structuring a large financial transaction that aided the corrupt bribery relationship between Dalbec and Nash.

*The Nature, Circumstances, and Seriousness of the Offense*: Defendant's crime involved a serious breach of the public trust. Although her culpability is mitigated somewhat by her deference to Dalbec, the United States believes the defendant knew the bribery conduct was wrong and that she should be punished accordingly. A sentence of

363 days home detention with the terms described below is a sufficient sentence to punish her for this conduct.

*History and Characteristics of the Defendant*: As detailed in the PSR, the defendant was born in Kabul, Afghanistan, and allegedly experienced a number of abusive personal relationships. The defendant has one young child with whom she shares custody with Mr. Dalbec. Partially due to the lengthy prison sentence Mr. Dalbec is likely to receive, the United States agreed to recommend a sentence of home detention as opposed to incarceration for Ms. Nadem.

*The Need for Adequate Deterrence and Protection of the Public*: The need to appropriately reflect the seriousness of the defendant's offense, afford appropriate deterrence, protect the public, and afford the defendant appropriate rehabilitation similarly dictates a sentence of 363-days' home detention. Federal officials have a difficult job protecting the integrity of federal procurement programs from bribery and corruption, and the nature of these criminal acts makes this type of offense particularly difficult to detect. This dynamic makes general deterrence vitally important to maintaining the integrity of the government procurement process. The proposed sentence here will serve the important goal of warning others of the serious consequences of cheating the procurement system.

*The Kind of Sentences Available and the Sentencing Range Established by the Sentencing Commission*: The United States' requested sentence is an appropriate sentence and is below the bottom of the applicable Sentencing Guidelines range established by the Sentencing Commission.

*Conditions of Home Detention and Supervised Release:* The United States has ongoing concerns about the defendant's mental health based on her conduct in this case and others. Specifically, from her first contact with law enforcement in this case, Nadem has consistently lobbed baseless allegations of racial discrimination and made other serious (false) allegations of misconduct against Federal Agents, U.S. Marshals, and Probation Officers. The United States understands that her behavior was so concerning that the Probation Office now requires two officers to be present any time Nadem is contacted. And this is not the first time Nadem has engaged in these types of false accusations towards law enforcement. In 2014, the North Dakota Attorney General's Office investigated Nadem, Dalbec and their construction company for fraud. During that investigation, Nadem engaged in the following concerning conduct as described by investigators and attorneys involved in that case:

- Immediately upon the Attorney General's office reaching out to her, Nadem accused investigators of being racist. At the time no one on the case team even knew Nadem's race.

- Nadem continued to make numerous false allegations against the prosecutors and Judge throughout the investigation. For example, Nadem made baseless allegations that one of the Assistant Attorney Generals on the case was biased and had a personal vendetta against her because of a false relationship she claimed they had in the past (which never occurred). Nadem went so far as to go on a local radio show and accuse the prosecutors of being racists and playing golf with the judge on the case, allegations which were blatantly false. She was described by every member of the case team as a "pathological liar," and would consistently lie about even mundane events such as where she was during calls with the AG's office.

- Nadem also told investigators that she had a special approval to work on federal USAID contracts, which the investigative team subsequently confirmed with

USAID was false. They also determined that Nadem had lied on her application for a liquor license.

The AG's office ultimately settled the fraud case against Dalbec and banned his and Nadem's company from doing construction in North Dakota.[1] Notably, every member of that case team interviewed by the United States specifically remembered Nadem's conduct and described it as concerning and having a lasting impact on them.

Accordingly, during her term of home detention and supervised release the United States requests that the Court require the defendant to obtain a full mental health assessment from a provider approved by the Probation Office, and to sign ROIs to allow Probation to understand the recommendations from this assessment and to enable them to monitor her compliance with those recommendations. The United States requests that the government and the probation office receive notice of the provider performing the assessment and scheduled time for the assessment to allow time for the government and the probation office to send collateral documentation relevant to the defendant's mental health status and assessment.

*Fine and Restitution*: The United States defers to the Court regarding the $25,000 fine recommended by Probation. The defense has represented that Ms. Nadem lacks the financial means to pay a significant fine, however the United States has not independently verified this claim and a payment plan may alleviate these concerns.

//

---

[1] *See State of North Dakota Ex Rel. v. Dalbec Property Management, Inc.; and Ryan Dalbec, Individually*, available at: https://attorneygeneral.nd.gov/sites/ag/files/documents/RecentActions/2014-03-18-Dalbec-CD.pdf (last visited Nov. 25, 2022)

## IV. CONCLUSION

For the reasons stated herein, the United States respectfully asks the Court to sentence the defendant to a term of 363-days' home detention, followed by a three-year term of supervised release. This sentence recognizes the seriousness of the defendant's crimes, her history and characteristics, and the important need to deter others from engaging in similar activity.

RESPECTFULLY SUBMITTED this 25th day of November 2022, in Fairbanks, Alaska.

S. LANE TUCKER
United States Attorney

s/ Ryan D. Tansey
RYAN D. TANSEY
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2022,
a true and correct copy of the foregoing
was served electronically on the following:

All Counsel of Record

s/ Ryan Tansey
Office of the U.S. Attorney